UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CATHERINE RAFFERTY,

                Plaintiff,

    -v-                            3:12-CV-1554

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                       OF COUNSEL:

LACHMAN & GORTON            PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

OFFICE OF REGIONAL GENERAL COUNSEL   JOANNE JACKSON PENGELLY, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II  REBECCA H. ESTELLE, ESQ.
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Catherine Rafferty ("Rafferty" or "plaintiff") brings this action pursuant to

§§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) &

1383(c)(3), to review a final determination of the defendant Commissioner of Social Security

denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. **BACKGROUND**

Rafferty filed an application for DIB and SSI on November 20, 2008, claiming a period of disability beginning on July 31, 2007.  She was twenty-seven years old when she filed her application.  Her claims were initially denied on April 7, 2009.  Upon plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 9, 2011.  Plaintiff attended the hearing and was represented by counsel.  Her cousin, William Rafferty, with whom plaintiff resides, also attended the hearing and provided testimony.  Plaintiff's alleged disability is primarily caused by a recurring skin condition, side effects of steroids she takes for the skin condition, back pain, obesity, and asthma.[2]  The ALJ rendered a decision on March 18, 2011, denying her claims.

On March 29, 2011, plaintiff appealed the ALJ's decision to the Appeals Council.  In April and May 2011, plaintiff's counsel submitted over 120 pages of additional medical records from her treating physician assistant, Paul Hodgeman ("P.A. Hodgeman"), to the Appeals Council.  The Appeals Council denied review on August 21, 2012.  Thus, the ALJ's decision became the final decision of the Commissioner.  Plaintiff filed this action on October 16, 2012.

---

[1]  Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2]  Despite her asthma condition, plaintiff advised the ALJ that she continues to smoke half a pack of cigarettes per day.  R. at 50 (Citations to "R." refer to the Administrative Record.  ECF No. 9.).  In March 2009, she informed consultative examiner Dr. James Naughten that she smokes one pack per day.  R. at 267.  In June 2009, she told a consulting physician that she has smoked half a pack of cigarettes daily for nineteen years, meaning she began smoking as a nine-year-old.  R. at 374.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

**B. Disability Determination—The Five Step Evaluation Process**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then Step Two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If so, then the claimant is

"presumptively disabled."  Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for Step Five.  Id.  This step requires the agency to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

Where the alleged disability involves a mental impairment, there is a "special technique" that must be applied at Steps Two and Three and at each level of the administrative review process.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a.  This technique requires consideration of "four broad functional areas," including:  "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).  The first three areas are rated on a five-point scale:  "[n]one, mild, moderate, marked, and extreme."  Id.

§ 404.1520a(c)(4).  "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."  Kohler, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(d)(1)).

If, on the other hand, the claimant's mental impairment is deemed severe, "the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder."  Id. (citing 20 C.F.R. § 404.1520a(d)(2)).  If so, the claimant is disabled.  Id.  If not, the reviewing authority then assesses the claimant's RFC at Step Four.  Id. (citing 20 C.F.R. § 404.1520a(d)(3)).  The application of this special technique must be documented.  20 C.F.R. § 404.1520a(e).

### C. Analysis

The ALJ determined that Rafferty had not engaged in substantial gainful activity since July 31, 2007, the alleged onset date.  He further determined that her skin condition, obesity, and asthma constitute severe impairments.  He also noted that the medical record indicates some reports of lower back pain, a thyroid condition, and gastroesophageal reflux disease ("GERD"), but does not support a finding that such ailments amount to severe impairments within the meaning of the Regulations.  The ALJ next found that plaintiff's alleged mental impairments—anxiety and depression—are not severe because they "do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities."  R. at 17.  In reaching this conclusion, the ALJ afforded great weight to a consultative psychiatric evaluation by Dr. Mary Ann Moore and significant weight to a consultative psychological assessment by Dr. Maria Morog.

The ALJ ultimately determined that Rafferty has an RFC that allows her "to perform slightly less than the full range of sedentary work." R. at 18. In reaching this conclusion, the ALJ discredited plaintiff's assertion that her skin condition flares up often and prevents her from working at all. He also assigned no weight to P.A. Hodgeman's opinion that she is unable to perform any work activity. Finally, the ALJ concluded that Rafferty is capable of performing her past relevant work as a collection clerk as well as other jobs available in the national economy. Therefore, the ALJ determined that she is not disabled within the meaning of the Social Security Act.

Rafferty maintains that the ALJ and Appeals Council made several errors when considering her application for DIB and SSI. First, she claims the Appeals Council erred in failing to consider additional medical evidence submitted by her attorney before denying review. Next, she alleges the ALJ erred by: (1) failing to properly consider whether her impairments amount to a disability within the Listings, specifically Listing 8.03; (2) failing to adequately develop the record with respect to her skin condition; (3) failing to consider the combined impact of ailments deemed non-severe; (4) determining that she has the RFC to perform slightly less than the full range of sedentary work; (5) discounting her subjective complaints of severe limitations; and (6) failing to utilize the services of a vocational expert.

### 1. Additional Medical Evidence

Rafferty claims the Appeals Council "committed procedural error by failing to properly consider new medical information from treating physicians" before denying her request for review. Pl.'s Mem. 1.

In denying Rafferty's request for review, the Appeals Council noted that it had "considered the reasons you disagree with the decision and the additional evidence," which

specifically included a letter submitted by her counsel and the two sets of additional medical records submitted by her counsel in April and May 2011. R. at 1, 5. It concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision." R. at 2.

Therefore, contrary to plaintiff's assertion, the Appeals Council received, considered, and specifically cited the additional medical evidence from her treating physicians. It thus fulfilled its duty to receive and consider any additional material evidence when considering a request to review the ALJ's decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b). This additional evidence has become part of the administrative record to be considered upon judicial review. Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).

### 2. **Listing 8.03**

Rafferty argues that the ALJ failed to properly consider and discuss the Listings at Step Three. She specifically alleges that her skin condition satisfies Listing 8.03.

Plaintiff correctly notes that, generally, an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam). However, the failure to provide such an express rationale does not necessarily dictate remand if a reviewing court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Id. Remand is only required in cases where a reviewing court "would be unable to fathom the ALJ's rationale" supporting his Step Three determination. Id.; see also Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112–13 (2d Cir. 2010) (summary order).

The ALJ determined that Rafferty suffers from "spongiotic dermatitis with excoriation

and folliculitis," which is consistent with a diagnosis in the medical record. R. at 14. He concluded: "Although the claimant has physical impairments which are considered to be 'severe,' they are not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listings." R. at 18. This is almost identical to the language deemed insufficient in Berry. See 675 F.2d at 468 ("the ALJ's otherwise thorough opinion failed to set forth a specific rationale" to support his conclusion that "claimant's conditions were not attended by clinical findings that meet or equal in severity the requirements of Appendix 1"). However, also like Berry, remand is not warranted. While the ALJ certainly could have more thoroughly explained his reasons for this conclusion, especially with regard to Listing 8.03, other portions of his decision demonstrate sufficient reasoning that is consistent with substantial evidence in the record.

To satisfy Listing 8.03, plaintiff must show that she suffers from a "*Bullous disease* (for example, pemphigus, erythema multiforme bullosum, epidermolysis bullosa, bullous pemphigoid, dermatitis herpetiformis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.03. The severity of such a skin condition is measured by the extent and frequency of outbreaks of skin lesions, how the symptoms limit function, and the extent and effectiveness of treatment. Id. § 8.00(C). The Listings define "extensive skin lesions" as lesions "that involve multiple body sites or critical body areas, and result in a very serious limitation." Id. § 8.00(C)(1).

In his decision, the ALJ deemed Rafferty's skin condition a severe impairment, but discounted the claimed frequency, duration, and severity of the limitations caused thereby. The ALJ wrote: "While the evidence shows that the claimant has a serious skin condition, it

is unclear exactly how often it affects her and to what degree.  The evidence shows a great variety of sporadic outbreaks, some very mild and some quite serious."  R. at 19.  During the hearing, plaintiff reported that she last experienced an outbreak over four months before the hearing.  R. at 19, 54.  The ALJ reviewed the medical record, which indicated "approximately three or four [outbreaks] a year."  R. at 20.  In June 2005, P.A. Hodgeman estimated that he treated her for outbreaks five or six times over the course of two years.  R. at 19, 229.[3]

The ALJ also noted Rafferty's historic ability to work despite her skin condition.  During a March 2009 consultative examination, she informed Dr. James Naughten that she has suffered from this skin condition for the last ten years.  R. at 15, 266.  The ALJ pointed out that plaintiff continued to work full-time as a data entry clerk until 2007, when she was forced to stop due to a high risk pregnancy, not due to her skin condition.  R. at 20, 260.  In her application for benefits, plaintiff indicated that she can perform household chores, cook full meals, and care for her young son despite her skin condition.  R. at 19, 165–66.

Finally, the ALJ cited various reports in the medical record indicating a positive response to treatment.  For example, her treating dermatologist, Dr. Natalie Roney, noted in August 2009 that plaintiff's "rash is fine while taking Prednisone."  R. at 19, 380.  Dr. Roney also reported that plaintiff's physical limitations were "not relevant" because she was being treated for her skin condition.  R. at 19, 254.[4]

In short, although the ALJ did not provide a detailed explanation regarding his Step

---

[3]  Although not specifically cited by the ALJ, plaintiff informed Dr. James Naughten that her outbreaks "may last up to two to three weeks."  R. at 266.  This further supports the ALJ's determination that plaintiff's skin condition does not qualify under Listing 8.03.

[4]  Plaintiff's attempt to discount this report as an "unsigned and incomplete document" is unpersuasive.  The report specifically refers to "attached office notes," which are signed by Dr. Roney.  R. at 252.

Three determination, there is sufficient reasoning elsewhere in the decision to support his conclusion that Rafferty's skin condition does not satisfy Listing 8.03. This conclusion is based on substantial evidence in the record indicating that the severity and frequency of her outbreaks do not amount to a "very serious limitation," and the medical records from her treating providers suggest she responds well to treatment.[5] Accordingly, the ALJ did not err with respect to his Step Three determination.

### 3. **Record Development**

Rafferty faults the ALJ for failing to adequately develop the record. She specifically alleges that the ALJ claimed the record was devoid of a function-by-function analysis and sufficient information regarding the frequency and severity of her skin condition outbreaks. She argues that the ALJ erred by not requesting additional information to fill these gaps, especially since he assigned no weight to P.A. Hodgeman's assertion that she cannot perform any work activity.

It is well settled that an ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982); 20 C.F.R. § 404.1512(d). In certain circumstances, an ALJ should contact a source of a claimant's medical evidence to obtain additional information, regardless of whether the claimant is represented by counsel. Pearson v. Astrue, No. 1:10-CV-521, 2012 WL 527675, at *6–7 (N.D.N.Y. Feb. 17, 2012) (D'Agostino, J.). For example, an ALJ will obtain additional evidence if he is unable to make a determination of disability based on the current record.

---

[5] Rafferty also faults the ALJ for relying on a report by allergist Dr. Asha Gupta. Plaintiff correctly notes that Dr. Gupta merely concluded that her skin condition is not allergy-related. Dr. Gupta did not opine on the frequency or severity of plaintiff's outbreaks. However, as noted above, the ALJ cited and relied upon substantial evidence elsewhere in the record. Any improper reliance on Dr. Gupta's limited report is thus harmless.

Id.; 20 C.F.R. § 404.1527(c)(3). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In light of the aforementioned substantial evidence supporting the ALJ's Step Three determination, plaintiff's assertion that the ALJ identified a void in the record regarding the frequency and severity of her outbreaks is without merit. Indeed, in her memorandum of law, plaintiff identifies numerous data in the record related to this issue. She simply disagrees with the ALJ's interpretation of the record and ultimate determination that her condition does not constitute an impairment within the meaning of Listing 8.03.

In addition, the record contained sufficient medical evidence for the ALJ to make a determination of disability without requesting a function-by-function analysis from P.A. Hodgeman. The record contains volumes of medical reports from plaintiff's treating providers dating back to 2002 as well as an assessment from her treating dermatologist, Dr. Roney, and consultative reports. These records constitute a complete medical history on which the ALJ properly based his decision. See Johnson v. Astrue, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011); 20 C.F.R. § 416.912(d).

Further, in discounting P.A. Hodgeman's blanket assertion that plaintiff can not engage in any work activity, the ALJ specifically highlighted inconsistencies between that assessment and evidence elsewhere in the record. Indeed, P.A. Hodgeman's assertion that plaintiff is unable to perform any work conflicts with her undisputed ability to care for her son and perform household chores, her past work experience, and Dr. Roney's assessment that her physical limitations are "not relevant" because she is being treated for her skin condition.

R. at 254.[6]

Accordingly, the ALJ fulfilled his duty to develop the record, and his decision to assign no weight to P.A. Hodgeman's assessment is supported by substantial evidence in the record.

### 4. Non-severe Impairments

Rafferty next faults the ALJ for concluding that several impairments are not severe. She specifically alleges the ALJ failed to consider the combined impact of her back pain, thyroid condition, GERD, and mental and emotional issues. In fact, plaintiff suggests the ALJ did not consider these conditions at all. This is unavailing. In addition to discussing plaintiff's skin condition, asthma, and obesity at length, the ALJ explained why plaintiff's lower back pain, thyroid issue, and GERD do not constitute severe impairments within the meaning of the Regulations. See R. at 15–16.[7]

The ALJ specifically noted that a May 2010 thyroid study revealed "normal" findings. R. at 15, 408. October and November 2010 medical notes indicate she was "stable" on her thyroid medication. R. at 16, 395, 397. Dr. Naughten examined plaintiff, reviewed her medical records, and noted that her back pain does not radiate, has not required surgery,

---

[6] P.A. Hodgeman completed this assessment in August 2010. The medical records indicate that plaintiff met with P.A. Hodgeman on an almost monthly basis in 2010. However, plaintiff's skin condition—the impairment that allegedly restricts her functioning more than any other—was mentioned only once in the medical records for 2010. Specifically, on January 29, 2010, P.A. Hodgeman noted that plaintiff was seen "for a follow-up of chronic dermatitis." R. at 326. He further indicated that this skin condition "is currently stable." Id. Plaintiff's appointments with P.A. Hodgeman in 2010 instead focused mainly on her thyroid issues, dental pain, an ankle sprain, asthma, and a respiratory tract infection.

[7] Plaintiff's attempt to characterize the ALJ's determination regarding her back pain as "internally inconsistent" is unpersuasive. The ALJ's decision clearly indicates that he deemed her skin condition, obesity, and asthma to be severe impairments. R. at 14. He then clearly explained that "[t]he medical evidence does not indicate that a thyroid condition, low back pain, and GERD impose limits on the claimant's ability to engage in basic work activities; therefore, these conditions are not severe within the meaning of the Regulations." R. at 16.

- 13 -

and is controlled with medication.  R. at 15, 266.  Plaintiff advised Dr. Naughten that her back

pain rated a four on a scale of one to ten.  R. at 266.  Moreover, the ALJ correctly noted that

nothing in the medical record suggested plaintiff's GERD severely impaired her ability to

function.  Plaintiff does not identify any evidence to the contrary.  Nor does she cite any

evidence to support her conclusory assertion that the combined impact of her physical

impairments significantly restricts her ability to perform basic work activities.

Additionally, the ALJ devoted two full pages of his decision to Raffety's mental

impairments, ultimately concluding:  "Because the claimant's medically determinable mental

impairments cause no more that 'mild' limitation in any of the first three functional areas and

'no' episodes of decompensation which have been of extended duration in the fourth area,

they are non-severe."  R. at 17.  In reaching this conclusion, the ALJ cited and discussed the

consultative psychiatric evaluation of Dr. Mary Ann Moore and the mental RFC assessment

completed by Dr. Maria Morog.  R. at 16–17.

Plaintiff informed Dr. Moore that "her memory and concentration are fine."  R. at 261.

Dr. Moore observed that plaintiff exhibited "coherent and goal directed" thought processes

"with no indication of hallucinations, delusions, or paranoia."  R. at 262.  She further noted

that plaintiff's attention, concentration, and memory skills are "intact," her cognitive

functioning is in the "[a]verage range," her insight "[a]ppears good," and her judgment

"[a]ppears fair" despite her depression and anxiety.  Id.  Dr. Moore concluded:

> The claimant can follow and understand simple directions and instructions,
> and perform simple rote tasks under supervision.  She can perform simple
> tasks.  She did show general intact attention and concentration.  She has the
> ability to learn simplistic and complex tasks.  She may have some slight
> difficulty dealing with stress.  She can generally relate adequately with others,
> make appropriate work decisions, and maintain a regular schedule.

Results of the examination appear to be consistent with stress related problems and psychiatric issues, which in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

R. at 263. The ALJ assigned "great weight" to Dr. Moore's evaluation. R. at 17.

There is thus substantial evidence in the record supporting the ALJ's determination that plaintiff's lower back pain, thyroid issue, GERD, and mental impairments are not severe within the meaning of the Regulations.

### 5. RFC Determination

Rafferty next asserts that the ALJ's RFC determination is not supported by substantial evidence in the record.

The ALJ determined that, despite plaintiff's severe impairments, she retained the RFC to perform slightly less than the full range of sedentary work, including her past relevant work as a collection clerk. As previously noted, plaintiff has suffered from the same skin condition for many years. Nevertheless, she was able to work as a data entry clerk until 2007. There is nothing in the record, nor anything identified by plaintiff, suggesting her skin condition has worsened in recent years. Indeed, the record indicates that plaintiff's employment ended in 2007 due to a high risk pregnancy, not because of a deterioration in her skin condition. R. at 260. Further, as noted above, the medical records from 2010 indicate P.A. Hodgeman did not treat her for an outbreak that year. This counsels against a finding of severe limitation. See Snell v. Apfel, 177 F.3d 128, 135–36 (2d Cir. 1999) (requiring plaintiff to show that a pre-existing condition "deteriorated from what it had been when she was in fact working" in order to establish a disability based on that condition).

Plaintiff also cares for her young son, performs household chores, and cooks meals.

R. at 165–66.  Further, the alleged severity of the limitations caused by her skin outbreaks is undercut by the reports of her treating dermatologist, Dr. Roney.  Dr. Roney indicated that plaintiff's "rash is fine while taking Prednisone" and opined that plaintiff's physical limitations were "not relevant" because she was being treated for her skin condition.  R. at 380, 254.

Further, the ALJ's RFC determination is entirely consistent with the findings of consultative examiner, Dr. James Naughten.  According to Dr. Naughten, plaintiff's skin condition limits "her ability to do sustained physical activity in terms of pushing, pulling, reaching, lifting, carrying, and handling objects when flare ups occur."  R. at 269.  He further noted that she has no limitations "seeing, hearing, talking, sitting, or standing" and should avoid respiratory irritants due to her asthma.  Id.  Such an assessment supports the ALJ's conclusion that Rafferty can perform slightly less than the full range of sedentary work.[8]

In short, the ALJ's determination that plaintiff has the RFC to perform slightly less than the full range of sedentary work, including her past relevant work as a collection clerk, is supported by substantial evidence in the record.

### 6. Credibility Determination

Rafferty next argues that the ALJ improperly discounted her subjective complaints of severe limitations when determining her RFC.  The ALJ considered the evidence in the record and concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are somewhat credible."  R. at 20.

---

[8]  To the extent plaintiff claims the ALJ failed to consider the impact of the side effects of her steroid medication, such is without merit.  The ALJ discussed and cited the consultative psychiatric evaluation of Dr. Mary Ann Moore and the mental RFC assessment performed by Dr. Maria Morog.  R. at 16–17.  These reports indicate that any emotional issues or mental impairments triggered by her steroid use are not so severe as to prevent her from working.  The ALJ also pointed out that Rafferty has no history of psychiatric hospitalizations and was not engaged in out-patient counseling.

Although the ALJ is required to consider plaintiff's reports of pain and other limitations when determining the RFC, he may use discretion when weighing the credibility of such subjective complaints.  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam).  When evaluating a claimant's assertions of pain and other limitations, the ALJ must utilize a two-step approach as outlined in the regulations.  Id.  First, it must be determined "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Id. (citing 20 C.F.R. § 404.1529(b)).  If so, the ALJ must then "consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Id. (quoting 20 C.F.R. § 404.1529(a)).

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant."  Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and alteration omitted).  As long as the ALJ's decision to discredit the claimant's subjective complaints is supported by substantial evidence, that decision must be upheld.  Id.

In his written decision, the ALJ detailed the applicable two-step analysis of plaintiff's subjective complaints.  R. at 18–20.  He found that although her medically determinable impairments could be expected to cause the claimed symptoms, the alleged severity of those symptoms is inconsistent with the objective medical evidence in the record.  This determination is supported by substantial evidence.

As explained above, Rafferty's assertion that her skin condition renders her unable to engage in any work whatsoever conflicts with evidence in the record indicating she worked

full-time in the past and continues to care for her son and perform household chores despite this condition. Moreover, the medical records belie her claim that she suffers thirty outbreaks annually and that some outbreaks last over three months. Indeed, in June 2005, P.A. Hodgeman estimated that he treated her for outbreaks five or six times over the course of two years. The record suggests P.A. Hodgeman did not actually treat plaintiff for an outbreak at all in 2010. At the March 2011 hearing plaintiff informed the ALJ that she last experienced an outbreak four months before the hearing. Also, in March 2009 plaintiff told Dr. Naughten that her outbreaks "may last up to two to three weeks." R. at 266.

In short, the ALJ's decision to discredit Rafferty's subjective complaints of severe limitations is supported by substantial evidence and will not be disturbed.

### 7. <u>Vocational Expert</u>

Finally, Rafferty argues that the Step Five determination—that she is capable of performing jobs available in the national economy—is legally flawed because the ALJ did not employ the assistance of a vocational expert.[9] In his decision, the ALJ acknowledged plaintiff's non-severe mental impairments. Rafferty concludes that he was therefore required to employ a vocational expert at Step Five instead of simply relying on the Medical–Vocational Guidelines.

"[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." <u>Bapp v. Bowen</u>, 802 F.2d 601, 603 (2d Cir. 1986). Instead, a vocational expert must be used only

---

[9] As the ALJ's Step Four determination—that Rafferty retains the RFC to perform her past relevant work as a collection clerk—is supported by substantial evidence, her complaint regarding Step Five is arguably moot. Nonetheless, this issue will be addressed in the interest of completeness.

where "a claimant's nonexertional impairments significantly diminish [her] ability to work—over and above any incapacity caused solely from exertional limitations—so that [she] is unable to perform the full range of employment indicated by the medical vocational guidelines." Id. The application of the Medical–Vocational Guidelines and the necessity for a vocational expert "must be determined on a case-by-case basis." Id. at 605. "If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." Id. If, on the other hand, "a claimant's nonexertional impairments significantly limit the range of work permitted by [her] exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." Id. (internal quotation marks omitted).

Rafferty's non-exertional impairments—her depression, anxiety, and need to avoid respiratory irritants—do not significantly diminish her ability to work more than her exertional impairments do. She has never been hospitalized for mental health concerns, and is not actively engaged in out-patient counseling. According to consultative psychiatrist Dr. Mary Ann Moore, plaintiff's attention and concentration are intact, she can follow and understand simple directions, perform simple tasks, learn simplistic and complex tasks, and "generally relate adequately with others, make appropriate work decisions, and maintain a regular schedule." R. at 263. In short, her mental impairments "[do] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Id.

Similarly, plaintiff's need to avoid concentrated exposure to respiratory irritants has only a minimal impact on her ability to perform sedentary work. See Berrios v. Colvin, No. 3:12-CV-970, 2013 WL 4647704, at *11 (N.D.N.Y. Aug. 29, 2013) (D'Agostino, J.); SSR 85-15, 1985 WL 56857, at *8 ("Where a person has a medical restriction to avoid excessive

amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."). Further, any assertion that the need to avoid respiratory irritants significantly impacts plaintiff's ability to work is undermined by her continued cigarette use.

In sum, Rafferty's non-exertional limitations are not over and above the limitations caused by her physical exertional impairments, and the guidelines adequately capture her condition. Therefore, it was not error for the ALJ to rely on the Medical–Vocational Guidelines and not produce a vocational expert.

## IV. <u>CONCLUSION</u>

The ALJ and the Appeals Council fulfilled their duty to properly develop the record and consider all pertinent evidence therein. Although the ALJ did not provide a detailed explanation regarding his Step Three determination, there is sufficient reasoning elsewhere in the decision to support his conclusion that Rafferty's impairments do not equal any of those in the Listings. The ALJ's determination that plaintiff's lower back pain, thyroid issue, GERD, and mental impairments are not severe, and that she retained the RFC to perform slightly less than the full range of sedentary work, including her past relevant work as a collection clerk, is supported by substantial evidence in the record.

Further, the ALJ justifiably discredited P.A. Hodgeman's assessment and plaintiff's subjective complaints of pain and limitations as they are inconsistent with the objective evidence in the medical record. Finally, the ALJ did not err by relying on the Medical–Vocational Guidelines instead of employing the services of a vocational expert when making his Step Five determination.

Therefore, it is

ORDERED that

1.  The Commissioner's decision denying plaintiff Disability Insurance Benefits and

Supplemental Security Income is AFFIRMED; and

2.  The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly and close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  May 9, 2014
        Utica, New York.